DEBORAH M. SMITH
Acting United States Attorney

DAVID A. NESBETT
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-6306
Fax: (907) 271-1500
E-mail: david.nesbett@usdoj.gov
Alaska Bar # 9811075

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | No. 3:06-cr-00026-JWS |
| ) | |
| Plaintiff,   ) | **GOVERNMENT'S TRIAL** |
| ) | **MEMORANDUM** |
| v.   ) | |
| ) | |
| CHRISTOPHER CHARLES,   ) | |
| ) | |
| Defendant.   ) | |
| ) | |

## I.     INTRODUCTION

The defendant is charged with one count of bank robbery and one count of

possession of a firearm during and relation to and in furtherance of a crime of

violence. Trial is set to begin Wednesday, August 9, 2006. The government's case in chief should take no longer than two days.

## II.     STATEMENT OF THE CASE

### A.     Case Summary

This case involves one incident. On March 16, 2006, at approximately 10:30 a.m., the Alaska USA Federal Credit Union located inside the Fred Meyers at 2000 West Dimond was robbed by an unknown male later identified as the defendant, Christopher Charles. Charles entered the Fred Meyers and walked into the bank wearing a red and black San Francisco 49ers jacket, black knit cap, gloves, and a bandana wrapped around his face. Charles approached the bank teller's station, brandished a semiautomatic handgun and a revolver in each hand and demanded money. The teller, fearing for his life, complied with Charles' demands and provided him with money from his drawer. Charles took the money and stuffed it in his jacket. Approximately $7,100 was taken from the bank. Charles then ran out of the bank.

Charles exited the Fred Meyers store and got into a white Toyota Supra with duct tape covering the license plate. He then exited the parking lot and headed southbound on Victor Road towards 100th Street. APD officers were

responding to the scene from all over town. Officers followed the defendant eastbound on 100th, then northbound on the Minnesota frontage road, then eastbound on Dimond. Charles drove around a patrol car, ran a red light and struck a vehicle heading east on Dimond. The officers followed Charles eastbound on Dimond where he turned south on Vernon. At this point, officers lost sight of Charles for a period of approximately 2-3 minutes. The officers set up a perimeter around the neighborhood. They then sighted Charles again attempting to exit the Dimond Estates trailer park located at 1200 W. Dimond. Charles traveled eastbound towards Arctic where he again collided with a patrol vehicle. The officers then followed Charles northbound on Arctic then eastbound on Dimond where he approached the intersection of King Street and Dimond Boulevard. Charles struck two vehicles and a patrol vehicle, disabling his car.

   Charles exited his vehicle with a shotgun in his left hand and ran over a snow bank into the La Mex parking lot. Charles refused to comply with officers' orders to drop his weapon and he was shot twice in his upper torso. Charles was taken into custody at this time and rushed to a hospital for medical treatment.

When taken into custody, Charles was no longer wearing the black and red jacket. The duct tape covering the license plate had been removed. A search of the vehicle Charles was driving revealed U.S. currency, matching bait bills taken from the bank during the robbery, a revolver and a pistol consistent with descriptions of those used during the robbery, a piece of duct tape, and glasses matching those worn by the robber.

Officers learned from the registered owner of the vehicle that Charles could have taken the vehicle from the residence at 1200 W. Dimond, where he and Charles live. When officers observed Charles driving from the trailer park, he was driving down the street on which the residence is located.

### B. Statement of Facts

At trial, the United States intends to present the following evidence as regards the March 16, 2006, incident:

1. The video portraying the robbery in progress showing the defendant and his clothing, which occurred on March 16, 2006.
2. The teller providing the robber with the money from his drawer.
3. The witness observing the defendant exiting the bank and entering his car.

4. The officers following the defendant throughout the south end of Anchorage, including one officer in particular who identifies the defendant both before he is lost in the neighborhood, and after he was picked up again leaving the neighborhood

5. One civilian witness who saw the defendant both before he was lost in the neighborhood, and after he was exiting back onto Dimond.

6. The officer who ended up shooting and arresting the defendant.

7. The officer who took the photos of the vehicle and its contents.

8. The officer who collected the defendant's clothing after the shooting.

9. The security officer who will testify to the video and the bank's federal insurance identification number.

### C. Summary of the Charges

Defendant, Christopher Charles, is charged in the Indictment with one count of bank robbery, in violation of 18 U.S.C. § 2113, and one count of possession of a firearm during and in relation to and in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).

### D. Witnesses

At trial, the government will call some or all of the following:

1. One or more of the local and federal law enforcement officers who were involved in the investigation of this case or who were involved in the arrest of the defendant.

2. The bank teller, Bradley Herring, and one or more civilian witnesses from inside the bank.

3. The bank security officer who collected the video from the bank.

5. One or more witnesses who can testify as regards the defendants location at the residence.

Total number of witness should be approximately 10.

**E.  Exhibits**

The government will offer some or all of the following exhibits at trial:

1. Firearms and related exhibits.

2. Video from inside the bank and related exhibits.

3. Items from inside the vehicle.

4. Lease agreement from residence at 1200 W. Dimond.

5. Clothing Charles was wearing when arrested.

6. Photographs taken at the scene and other related still photographs from the video.

7. Certified documents relating to the banks federal insurance company.

8. Cash audit sheet.

9. Bait money identification log

### III. LEGAL/EVIDENTIARY ISSUES

#### A. Expert Witness Testimony

##### General Standards

Expert opinions are admissible if they will assist the trier of fact to understand the evidence or determine a fact in evidence. Rule 702, Fed. R. Evid. Expert opinions, as opposed to testimony by summary witnesses, may be based on facts or data not admissible into evidence. Rule 703, Fed. R. Evid.

An expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704. The court has broad discretion to determine whether to admit expert testimony. United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987); United States v. Binder, 769 F.2d 595, 601 (9th Cir. 1985).

The government will give written notice to the defendant in the event it intends to elicit expert opinion testimony from chemists employed by the state crime laboratory in Anchorage and a firearms expert from ATF.

## B. Limits of Relevant Defenses

Rule 403, Fed. R. Evid., provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also, United States v. Brannon, 616 F.2d 413, (9th Cir. 1980), cert. denied, 447 U.S. 908. The trial court has broad discretion in determining admissibility under Rule 403. United States v. Moore, 552 F.2d 1068, 1079 (9th Cir. 1975), cert. denied, 423 U.S. 1049 (1976).

An area of common exclusion involves attempts to confuse the issues or mislead the jury by introducing evidence of matters that do not establish a defense to the charged crimes. See, United States v. Tidwell, 559 F.2d 262, 266-7 (5th Cir. 1977), cert. denied, 435 U.S. 942 [excluding evidence that defendant's manipulation of bank funds was beneficial to bank on grounds of danger of confusion of issues and misleading jury where belief in benefit to bank was not a defense to misapplication of funds]; United States v. Johnson, 558 F.2d 744, 746-47 (5th Cir. 1977), cert. denied, 434 U.S. 1065 [excluding evidence of purported

overpayment of taxes in fraudulent tax return prosecution on grounds of confusion of issues and improper appeal to emotions of jury].

In addition, although the Ninth Circuit has long recognized that juries have the power to acquit a defendant regardless of the evidence of his guilt, (see, United States v. Simpson, 460 F.2d 515, 518-19 (9th Cir. 1972)), it has never recognized a right held by a defendant to seek such a verdict. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1991). Thus, because a defendant has no right to seek nullification, he has no right to present evidence relevant only to such a defense. See, Zal v. Steppe, 968 F.2d 924, 930 (9th Cir.), Trott, J., concurring, cert. denied, 113 S.Ct. 656 (1992).

While the defendant obviously has a right to present relevant defenses to the charges, he has no right to seek jury nullification and thus no right to introduce evidence which would be relevant only to nullification. This includes any reference to the potential penalties which the defendant faces as a result of conviction. As the court is well aware, this is an area where trial juries are routinely instructed they are not to concern themselves with. The defendant may attempt to introduce evidence or make argument concerning the potential penalties he faces in this case, including the nature of the charges (felony

offenses). This should be excluded as irrelevant to the jury's mission here - to be the finders of fact.

### C. **Potential 404(b) Evidence**

In the event that the government argues that actions or statements of the defendant constitute 404(b) evidence, the government is hereby notifying the defendant that any such statements would be offered not to prove the character of the defendant in order to show action in conformity therewith, but to show his knowledge or absence of mistake or fact.

RESPECTFULLY SUBMITTED this 3rd day of August, 2006, at Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/ David A. Nesbett
Special Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-6306
Fax: (907) 271-1500
E-mail: david.nesbett@usdoj.gov
Alaska Bar # 9811075

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2006, a copy
of the foregoing Government's Trial Memorandum
was served electronically on Kevin McCoy.

s/ David A. Nesbett